IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Marquise Price,

Plaintiff,

vs.

HotChalk, Inc., and Mark Zinselmeier,

Defendants.

No. CV10-1611-PHX-NVW

**ORDER AND OPINION**

**[Re: Motions at Docket 8, 9, and 15]**

Before the Court are three motions filed by Defendants HotChalk and Mark Zinselmeier (collectively, "HotChalk"): a Motion to Compel Arbitration (Doc. 8); a "Motion Re: Judicial Notice" (Doc. 9); and another "Motion Re: Judicial Notice" (Doc. 15). The Court will grant the first two motions and deny the third.

**I. Motions for Judicial Notice**

HotChalk's motion to compel arbitration relies in part on the American Arbitration Association rules governing employment disputes, available on AAA's website at www.adr.org/sp.asp?id=32904. HotChalk's first motion for judicial notice therefore asks this Court to take notice of the AAA rules. (Doc. 9.) Plaintiff has not opposed the motion, nor is the Court aware of any reason why it should not judicially notice the AAA rules. Federal Rule of Evidence 201(b) permits the court to take judicial notice of an adjudicative fact that "is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

resort to sources whose accuracy cannot be reasonably questioned." Because Plaintiff does not oppose the motion and the AAA rules are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably disputed," the Court will grant HotChalk's first motion for judicial notice.

HotChalk's reply in support of its motion to compel (Doc. 14) seeks to refute the argument that Plaintiff cannot afford to arbitrate in Santa Clara County, California (as the arbitration clause at issue requires, explained below). HotChalk therefore relies, in part, on recent Southwest.com and Expedia.com searches to establish that travel to the Santa Clara County area would be reasonably affordable in March 2011 — which, HotChalk says, is the soonest an arbitration hearing could occur. HotChalk's second motion for judicial notice asks the Court to notice those search results. (Doc. 15.)

The time for Plaintiff to respond to this second motion for judicial notice has not yet expired, but the Court will deny it anyway. Airfare and hotel price quotes obtained on an internet search conducted in November 2010 for travel in March 2011do not qualify as facts "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably disputed," Fed. R. Evid. 201. Airfare and hotel rates are variable. Thus, prices quoted on the date defendants conducted their internet search may not be the same as prices on the actual purchase date. Accordingly, the Court will deny HotChalk's second motion for judicial notice.

## II. Background on the Motion to Compel Arbitration

HotChalk represents itself as "a learning environment for K-12 teachers, students and parents that includes a learning management system (LMS), a rich library of teacher-contributed lesson plans, premium digital content, and professional development for teachers in a Web-based environment." (Doc. 1 at p. 3.) In August 2009, HotChalk assumed certain duties for Concordia University Online, specifically, soliciting students to enroll in Concordia's degree programs and coordinating the application process for interested students. (Doc. 1 at p. 4.)

Plaintiff Marquise Price is an African-American man who worked for HotChalk as an "admissions counselor" in HotChalk's Concordia operations. In this capacity, Price solicited and followed up with prospective students. Price performed most of his duties from a home office in Maricopa County, Arizona, but at times attended meetings at a HotChalk office in Scottsdale, Arizona. (*Id.*)

An employment agreement, dated September 8, 2009, governed Price's relationship with HotChalk. It contains the following arbitration clause:

> It is hereby agreed that any and all disputes that arise under the terms of the Agreements between you and HotChalk shall be resolved through final and binding arbitration, as specified herein. This shall include, without limitation (except for claims under workers' compensation laws/regulations), any disputes relating to employment, or termination, claims for breach of contract or breach of the covenant of good faith and fair dealing and any claims of discrimination. Binding arbitration will be conducted in Santa Clara County, California in accordance with the rules and regulations of the American Arbitration Association. HotChalk will pay the cost of the arbitration.

(Doc. 8-1 at 6.)

Price alleges that he faced racial discrimination throughout his employment with HotChalk. He has now filed this lawsuit, claiming racial discrimination and retaliation in violation of federal and state civil rights statutes. HotChalk has moved to compel arbitration.

## III. Analysis of the Motion to Compel Arbitration

### A. The Federal Arbitration Act and Choice of State Law

The parties agree that Price's employment agreement involves interstate commerce. (*See* Doc. 1 ¶ 12; Doc. 8 at 3.) Therefore, the Federal Arbitration Act (FAA) governs the enforceability of the arbitration clause within the employment agreement. *See* 9 U.S.C. §§ 1, 2.

The FAA liberally favors arbitration. Generally, "[t]he court's role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho*

*Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (*citing* 9 U.S.C. § 4). However, a party hoping to avoid arbitration may challenge the arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This includes "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Price does not dispute that his claims against HotChalk fall within his employment agreement's arbitration clause. Price argues, however, that the arbitration clause is unenforceable because: (1) arbitrating in Santa Clara County is more expensive than litigating in Arizona because it will require him "to somehow pay for travel, lodging, dining and other expenses for both himself and his attorney — or to acquire yet another attorney in California" (Doc. 13 at 3 ¶ 6); and (2) the arbitration clause is part of an adhesive contract.

Price's arguments all reduce to a claim of unconscionability. "[U]nconscionability is governed by state law." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009). The employment agreement does not contain a choice-of-law clause, but both parties agree that Arizona law should apply. (*See* Doc. 12 at 3; Doc. 14 at 3.) The Court will therefore analyze the unconscionability of the arbitration clause under Arizona law.

### B. Unconscionability According to Arizona Law

#### 1. The Contract's Allegedly Adhesive Nature

Price argues that the arbitration clause is unconscionable because the employment agreement was a "take it or leave it" contract of adhesion. "An adhesion contract is typically a standardized form 'offered to consumers of goods and services on essentially a take it or leave it basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract.'" *Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 173 Ariz. 148, 150 (Ariz. 1992). HotChalk counters that the employment agreement was not offered on a "take it or leave it" basis, and in any event, there is no indication that Price tried to negotiate it.

The Court does not have enough evidence to decide whether the employment agreement was an adhesive contract. Arguments of counsel are not evidence, *see, e.g.*, *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002), and the parties' respective declarations do not directly address the issue. Price states in his declaration that "the surrounding circumstances and the way the documents were presented" led him to believe that the employment agreement was non-negotiable (Doc. 13 at 3 ¶ 4), while HotChalk's president, Ed Fields, states in his declaration, "It is not HotChalk's practice to tell prospective employees that the employment agreements are non-negotiable and we do not make any such statements to prospective employees" (Doc. 14-1 ¶ 4). Neither statement is helpful.

In any event, contracts of adhesion are not *per se* unenforceable. *Broemmer*, 173 Ariz. at 151. Rather, in Arizona, an adhesive contract is enforceable according to its terms unless the contract does not fall within the reasonable expectations of the weaker party or the contract is unconscionable. *Id*. The remainder of Price's arguments go directly toward unconscionability, so the Court will move to that question.

**2. The Santa Clara County Requirement**

Price argues that being forced to arbitrate in Santa Clara County will require him "to somehow pay for travel, lodging, dining and other expenses for both himself and his attorney — or to acquire yet another attorney in California." (Doc. 13 at 3 ¶ 6.) This issue — whether an arbitration clause is unconscionable because the plaintiff cannot afford arbitration — is controlled by *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000), and *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 119 P.3d 1044 (Ct. App. 2005). In *Green Tree*, the U.S. Supreme Court held that vague and conclusory assertions of a plaintiff's financial circumstances create only a "speculative" risk that the costs of arbitration would prevent plaintiffs from vindicating their rights. *Green Tree*, 531 U.S. at 90–92. In *Harrington*, the Arizona Court of Appeals incorporated *Green Tree* into Arizona unconscionability law, interpreting it as "dictat[ing] that arbitration agreements are enforceable in the absence of individualized evidence to establish that the costs of arbitration

are prohibitive." *Harrington*, 211 Ariz. at 252, 119 P.3d at 1055. Although the plaintiffs in *Harrington* had submitted affidavits stating that they lived on limited incomes, "[t]he affidavits offer[ed] no specific facts regarding [their] financial situations, only conclusory statements. There [was] no showing of assets or why arbitration costs would be a hardship, let alone a *prohibitive* hardship as required by [*Green Tree*]." *Id*. at 253, 1056 (emphasis in original).

The Court finds that Price, like the *Harrington* plaintiffs, has not sufficiently supported his allegations that arbitration in Santa Clara County would be too expensive. Price's declaration gives no specifics about his financial situation. He only "avow[s] that given [my] precarious financial circumstances, the additional cost of litigating this matter in the forum hand selected by HotChalk will almost force me to give-up on my claims." (Doc. 13 at 3 ¶ 7.) This is not specific enough to support a ruling that the arbitration clause is unconscionable.

The Court notes that the arbitration clause requires HotChalk to "pay the cost of the arbitration." Although this is vague, HotChalk's arguments in support of compelling arbitration clarify that "the only costs plaintiff will incur are for travel and lodging for the arbitration." (Doc. 14 at 6.) The Court therefore interprets "pay the cost of the arbitration" as HotChalk's agreement to pay all of the fees and expenses that the parties might have otherwise been reasonably expected to share, such as all fees and expenses owed to AAA and to the arbitrator, the cost of hiring a stenographer for the hearing, and the cost of renting a hearing room. Accordingly, Price faces fewer expenses than many arbitration participants.

The Court further notes that AAA rules for employment-related cases permit the arbitrator to "allow for the presentation of evidence [at the hearing] by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence." R-28, AAA Employment Arbitration Rules and Mediation Procedures (effective Nov. 1, 2009), *available at* http://www.adr.org/sp.asp?id=32904. This provision may help Price mitigate some costs of arbitrating in Santa Clara County.

Because a valid arbitration agreement exists and plaintiff's claims are within the scope of the arbitration agreement, the court must refer the action to arbitration and determine whether to dismiss the action or stay the action pending the results of arbitration. In *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 n.1 (9th Cir. 2004), the Ninth Circuit endorsed the advice of the Second Circuit that district courts "should be aware that a dismissal renders an order appealable under [9 U.S.C. § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under 16(b) ... Unnecessary dely of the arbitral process through appellate review is disfavored." "The [FAA] represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Id.* at 1153, (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). In keeping with the Congressional intent to move arbitrable disputes into arbitration as expeditiously as possible, the court will stay this action pending completion of arbitration.

**IV. Order**

IT IS THEREFORE ORDERED that Defendants' "Motion Re: Judicial Notice" (Doc. 9) is GRANTED.

IT IS FURTHER ORDERED that Defendants' "Motion Re: Judicial Notice" (Doc. 15) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Compel Arbitration (Doc. 8) is GRANTED.

IT IS FURTHER ORDERED that this case is STAYED pending the outcome of arbitration pursuant to 9 U.S.C. § 3.

DATED this 10th day of December 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE